White v. Winkluski is our next case. Mr. Pillay. Good morning and may it please the Court. Your Honors, Mr. White's trial boiled down to the question of whether the jury determined that the precise actions that Mr. White took in defending himself against an unprovoked stabbing attack were reasonable. The prosecution conceded at trial that the botched crime scene left the physical evidence open to speculation. That left Mr. White as the lone eyewitness who could tell the jury what happened in the key struggle with Ms. Weiland. But Mr. White was unable to physically demonstrate that struggle to the jury because, as his lawyer told the Court on the record, your Honors, Mr. White was electronically shackled. Now that left the jury with only Mr. White's verbal description. How are you electronically shackled? Because he was wearing a sunglasses. I understand what the electronic part is, but he wasn't shackled. That's right, your Honor. I think Mr. White's trial lawyer's use of electronically shackled was showing that the restraints were both electronic and physical. It was colorful language, but not accurate. Why don't we just use the phrase, stun belt, and go on? Fair enough, your Honor. The fact that Mr. White was wearing a stun belt and was unable to physically demonstrate the struggle left the jury with only his verbal description of that struggle where there should have been a demonstration. That was a void. And that void was glaring, your Honors, because the prosecution had invited Mr. White to perform that demonstration in front of the jury, but his lawyer had to object because he was wearing the stun belt. And prior to that, he had taken the stand, obviously, and does the record reveal whether or not there was any discussion between Mr. White and his counsel about him going up affirmatively and demonstrating it before the prosecution asked? The record does not reflect that, your Honor, and so we are not aware of that. What we do know is that Mr. White was left with a stun belt worn over his shirt, with a jacket that was too small for him to button, sitting behind his counsel table without so much as a table to block his view from the jury. And we know that he had to aggress to the witness stand and that, undoubtedly, the jury would have been able to see the stun belt at some point during that. Mr. Polate, for the petitioner to succeed here, is it correct that the petitioner must prevail on procedural default, ineffective assistance of appellate counsel, post-conviction counsel, ineffective assistance of trial counsel, and then the due process argument you're offering now? That's right, your Honor, but several of those questions are subsumed within one another. The procedural default, the excuse to the procedural default, is the fact that Mr. White received ineffective assistance of appellate counsel. And the fact that he received ineffective assistance of appellate counsel rests on the fact that appellate counsel had a clear and obvious claim of trial counsel ineffectiveness to raise that it ignored in favor of an irrelevant claim under the Confrontation Clause. So, and the Wisconsin Court of Appeals holding on all of those rests on a lack of prejudice at trial. So, really, we're here talking about whether Mr. White was prejudiced at trial by his trial counsel's failure to object to the use of the visible stun belt, if that makes sense. I understand why you'd offer that argument because there's, from the petitioner's perspective, probably has more strength. But for purposes of our resolution, we've got to first deal with this procedural default question. Do you want to go there for a moment? Your Honor, we acknowledge that Mr. White procedurally defaulted the underlying stun belt claim because it was not raised on appeal. However, the fact that it was not raised on appeal was the fault of his appellate counsel for not raising that issue. And even if the appellate counsel couldn't have raised that claim directly, that's unclear, he absolutely could have raised a claim of ineffective assistance of trial counsel. Because trial counsel's failure on this was glaring. That could have been decided two years earlier and it was not. What did trial counsel do for White? You know, I'm struck by the fact that your brief just says, well, ineffective assistance of counsel, now let's talk about the merits of the stun belt. But the Supreme Court said in Strickland against Washington, that you have to evaluate the full course, the totality of counsel's performance. And I don't see any effort in your appellate brief to evaluate the totality of the performance either by appellate counsel or by trial counsel. What are we supposed to make of that? Your Honor, the reason is because whether or not the rest of trial counsel's performance was or was not ineffective, their failure to object to the use of visible restraints itself was glaring. And that holds... That's not the standard. The Supreme Court says you must evaluate the totality of counsel's performance. You know, we try not to engage in civil disobedience to decisions of the Supreme Court. They tell us to do that, we try to do that. Absolutely, Your Honor. And the reason that counsel's performance was deficient is because on this one issue, that failure was enough to swing the balance. We hear that from every lawyer to argue any ineffective assistance case. Well, Your Honor... And we don't buy it. Okay. Well, if you'd like... You need to argue what counsel did for his client. Now, of course, what I had expected you to say when I asked that question is, the state has ignored this, and so it's waived or forfeited our forfeiture of the correct standard. Well, Your Honor, that's a better argument, and you're absolutely right that the state did not waive that. It is engaged with us that trial counsel's failure to object to the use of visible restraints was not ineffective. We just hear day in and day out claims that making one error is the same as ineffective assistance of counsel. I have some hope, maybe a forlorn one, that people would read what the Supreme Court is saying about that. Fair enough, Your Honor. This Court has recognized that failure to object to the use of a stun belt, even not visible, itself is deficient performance. So the question here is whether that deficient performance, and that was the Rinkles case, but the question here is whether that performance prejudiced Mr. White, and I think it did, and I think it's clearer from this record than it would be from most records, Your Honor. That's because not only did Mr. White have to forego the physical demonstration, and we have to remember here that this case came down to the question of reasonableness of the force Mr. White used. That is a close toss-up question in any case, and in one where the person who's used that force has been stabbed 8 to 10 times, has a punctured lung, and requires an airlift to be saved, it's a particularly close question. So the demonstration was key there. But moreover, Your Honor, this Court has also recognized that a stun belt can have unseen effects on how a defendant testifies, because unlike shackles, a stun belt can actually hurt you. So that's exactly what happened in this case, Your Honor. The stun belt left Mr. White, you know, when the trial court ordered Mr. White to wear the stun belt, it specifically said... Is there some basis in the record? What you're implying now is that the defendant feared that if he didn't testify as the prosecutor wanted, he'd be shocked while on the stand. Is there any basis for that? No, Your Honor. That's not what I'm meaning to imply. What I'm meaning to imply is that when the circuit court ordered Mr. White to wear the stun belt, it cited the fact that he might be, quote, emotional. So what did Mr. White do? He delivered emotionless testimony in a trial for his life. And what did the prosecution do there? It harped on that. It seized on what it called Mr. White's cold, emotionless, stone-like demeanor. It harped again and again on his manner of presentation. And it tied that directly to the question of whether his actions were reasonable. When it mimicked his inflection or lack thereof to the jury and asked them rhetorically, is this consistent with an unavoidable self-defense killing? All of this is predicated on some type of a discussion that presumably trial counsel had with Mr. White. Do you want to take the stand? If you take the stand, they may see your stun belt. If you take the stand, they may ask you to demonstrate. If you take the stand, I'm going to ask you to demonstrate. But you're telling us that the record just is vacant with regard to that trial counsel White interplay on the issue. As far as I'm aware, Your Honor, it is vacant on that issue. But I would submit to you that a purported choice between those two impermissible choices, allowing your client to take the stand, visibly restrained without justification, and having him basically waive his opportunity to testify in his own defense, is itself an impermissible choice and no choice to be made at all. But, Your Honors, counsel's failure to object here is also clear for a second independent reason of Mr. White's testimony and the issue of the demonstration. And that's the fact that, and this is another reason why the Wisconsin Court of Appeals holding on this issue was patently unreasonable. Strickland commands that a court review the totality of the evidence and assess whether there was prejudice to the defendant in their criminal proceeding as a whole. The Wisconsin Court of Appeals simply didn't do that. It narrowly focused only on the purported prejudice to Mr. White at trial, and it ignored the prejudice that he clearly suffered on appeal. Had trial counsel objected to the use of the stun belt, Mr. White could have gone into a direct appeal and said to the court, Your Honors, I was visibly restrained by a stun belt without justification. You now must presume that I have been prejudiced unless the state can prove otherwise beyond a reasonable doubt. That is a strong claim. Instead of that strong claim, Mr. White was left struggling his way into a collateral review that required him to make a two-tiered showing of ineffective assistance of counsel, each of which required Mr. White to demonstrate prejudice under the Strickland standard. I can tell you, Your Honors, as Judge Eagerbrook has pointed out, that is not an easy argument to make, and even for a trained lawyer. For Mr. White, a pro se inmate, it was nearly impossible. The Wisconsin Court of Appeals should have understood that because its holding is specifically predicated on the fact that Mr. White failed to meet his burden. It should have recognized that Mr. White only had that burden to meet because of trial counsel's failure to simply raise an objection, and that failure to raise the objection was obviously glaring on this record because trial counsel obviously understood the prejudice that Mr. White would suffer if the jury saw him visibly restrained. The stun belt was clearly marking him as someone who is, as this court put it in the Wilbur case recently. How did the jury know what it was? We don't know, Your Honor, but we presume that the jury would have understood what this was. A juror would understand that this belt was a stun belt controlled electronically? Well, Your Honor, I mean, that is... Rather than a hernia belt, for example. And that is similar to what the prosecution... We see people on the football field all the time with big belts around their waist, but we don't assume they are stun belts. That's right, Your Honor. That's true, but I think here we... If counsel had objected, we would have to presume that the jury viewed these visible restraints. I mean, it is what it is. Nobody else in the room would have been wearing one. Well, we actually don't know that. We actually see U.S. Marshals with fairly bulky things around their waist, and I don't assume they're stun belts. They may be a form of body armor. Were any of these issues raised in any way in the state court? The reason I'm asking it that way is because you have a separate problem in federal court under 2254E, which says you can't have an evidentiary hearing about anything that could have been raised in state court and wasn't. Well, Your Honor, this was raised in Mr. White's petition under Wisconsin Statute 97406. Did he ask for an evidentiary hearing to explore questions like, what could the jurors see? Would they have assumed this is a stun belt, and so on? Your Honor, I will have to double check and get back to you on rebuttal, but I believe he did specifically ask for that. He did ask the circuit court specifically for what's called a—the name escapes me, but that specific hearing, and that hearing where it would be determined whether the jury saw things, what the jurors presumed this to be, was denied summarily. And that upholding of that decision is essentially the unreasonable decision that we're appealing here, which is the Wisconsin Court of Appeals' decision on the 974.06 petition. But even if that's all true, Your Honors, it doesn't excuse the Wisconsin Court of Appeals' failure to address entirely the effect on Mr. White's appeal and in his collateral proceedings from counsel's failure to simply object to the stun belt. All counsel had to do was say, I object, when he told the circuit court essentially everything but. It told the circuit court that this was preventing counsel from putting on the case it might have put on. It told him that it was preventing them from letting Mr. White demonstrate the key events, and yet it didn't simply object. Two years— Was it because he didn't use the word object? Because there's pushback there in the record, correct? There's pushback about forcing Mr. White to demonstrate, but not about allowing him to take the stun belt off and have a fair demonstration not visibly restrained. Doesn't his lawyer say he tries to stand between the jury and White to potentially obstruct it? That's exactly right, Judge Brennan. He does, and that makes inexplicable his decision not to simply object to the use of visible restraints. Keep in mind, at the time of the trial, there was no issue of procedural default. Deck was clear for two years at that point that it was inherently prejudicial to visibly restrain a defendant. Counsel had an absolute winner by just saying, I object to the use of visible restraints here. And the fact that he didn't simply make that argument not only prejudiced Mr. White in all the ways we've discussed at the trial, it prejudiced him to this day because we're here arguing, as Judge Easterbrook pointed out, about 2254E and all the presumptions that he has to overcome under a habeas case. And the Wisconsin Court of Appeals should have recognized that prejudice under the Strickland standard. Its total ignorance of that wasn't unreasonable, and I reserve the rest. Your time has expired. Mr. Blimley. Good morning, Your Honors. And may it please the Court, I am Assistant Attorney General John Blimley. I'm here today on behalf of Respondent Appellee Dan Winkleski, referred to in briefing as the State. As Your Honor pointed out, and as Mr. Pallet pointed out, a lot of this case really deals with the idea of ineffective assistance of counsel because there are layers in this case. And so I think it makes sense, for purposes of my argument, to sort of talk about these individually. But first I want to talk about the visibility of the stun belt because I do think that's a crucial issue here. And nothing in the record establishes clearly that the stun belt was ever visible to the jury. Does anything in the record establish that it was not visible? It does not, Your Honor. So the record is silent. The record is silent. Okay. So let's go to my question to your adversary. Was there a request for an evidentiary hearing in state court to establish whether the stun belt was visible or not? So Mr. White's 974-06 motion requested, I believe, what we would call a Mochner hearing in Wisconsin law, which is to... Instead of using terms specific to Wisconsin, why don't you just address it in the terms in which I asked it. Was there a request for an evidentiary hearing? It would be a request for an evidentiary hearing, yes. The evidence that they would generally seek to establish at that hearing would be related to counsel's representation. For example, if counsel had a justifiable reason for not objecting to the stun belt, to the use of the stun belt. The court has leeway, of course, the trial court has leeway to let that hearing go where it may. And so it is entirely possible at that hearing that counsel may have testified, did not object because the stun belt was not visible. And then that may have gotten into that issue. I don't know that Mr. White's 974-06 motion specifically requested to establish anything with respect to the visibility of the stun belt. Okay. Thank you. So with respect to ineffective assistance of what I call post-conviction counsel, because that is the selection of issues for appeal. Mr. White has to establish, to establish ineffective assistance of post-conviction counsel, that the issue that he wanted counsel to raise was clearly stronger than the issue that was in fact raised. And here he cannot do that because, as the Wisconsin Court of Appeals pointed out, what it really comes down to is the reasonableness of the force used and the reasonableness of his belief that that force was necessary. On the direct appeal, counsel pursued an issue related to the confrontation clause. Counsel alleged that Mr. White's confrontation rights were violated and that that violation was not harmless. Now, this was a straightforward claim for counsel to make because the state at that time had conceded that the statements in question were testimonial. That placed the burden on the state in appeal to establish that there was harmless error. How is that stronger, though, than the reasonableness of the force used? In here, Mr. White is charged with both first degree and second degree. The jury returns a verdict for second degree. How reasonable the force used, one can reasonably infer, would have resulted in that finding on a lesser inclusive offense. Isn't that a stronger area than the confrontation clause? Judge Brennan, I think that when you're comparing the two claims, it's interesting how similar the argument actually is that was made in Mr. White's direct appeal. If you look at the reply brief in the direct appeal, counsel talks about how the inclusion of these statements regarding aspects of Mr. White's relationship with Ms. Myland, the inclusion of those statements painted a picture for the jury of what kind of person Mr. White was and really tied it to the reasonableness or the reasonableness of his belief about the force used. It's a very, very similar argument to what we're hearing now, which is that seeing the stun belt, which again the state does not concede that the stun belt was visible, but if the stun belt was visible, that painted a picture in the jury's mind about what kind of person Mr. White was and therefore whether the force used was objectively reasonable. The key distinction between the two arguments is that with the confrontation clause claim, it was the state's burden to show that it was harmless, whereas if counsel had chosen to pursue ineffective assistance of trial counsel, he would have had to show both that trial counsel had performed deficiently and that there was prejudice. So I don't think Mr. White has established that the stun belt issue, the ineffective assistance of trial counsel issue, was in fact clearly stronger and therefore I don't think that you can get there on ineffective assistance of post-conviction counsel. Looking at ineffective assistance of trial counsel then, so this is where we sort of start to talk about double deference because again, this is really where the rubber meets the road on this claim. I don't think that, and the Court of Appeals concededly did not reach the issue of deficient performance, but I don't think that Mr. White can show deficient performance because again, there's nothing in the record that establishes that the stun belt was visible. On the issue of prejudice then, you still have the question about whether even if the counsel had, as Mr. Pillay suggested, objected to the use of the stun belt when he wanted to do a demonstration, if that would have had a result on the outcome of the proceeding. I think if you look at this through the lens of AEDPA and the deference owed to the state court's decisions under AEDPA, I don't think it's unreasonable for the Wisconsin Court of Appeals to arrive at the decision that all of the evidence against Mr. White would not have been overcome by this. That when you look at the objective reasonableness of his actions here, he was much larger than her. It was an incredibly violent crime where it seemed that Ms. Weiland was very likely unable to defend herself. How was she unable to defend herself? How many times did she stab him? Between 8 and 10. She may have fought back. She may have started it. I think if you look at the overall picture here, I don't think under looking at everything in the record that the Wisconsin Court of Appeals' decision is unreasonable in finding that the stun belt, even if visible, would not have changed the jury's mind about the objective reasonableness of Mr. White's belief. Beyond that, I do want to talk a little bit about just the decision to whether to have Mr. White demonstrate the fight with Ms. Weiland. Again, I don't think here it's unreasonable for the Court of Appeals to determine that that would not change the outcome. I think it's very telling that Mr. White is claiming, well, I would have had him do the demonstration, but the prosecution actually wanted him to do the demonstration too. I don't know that had Mr. White gotten up and done the demonstration, it really would have affected the outcome at all. Both parties seemed to think that that was going to benefit their side, and I'm not sure how Mr. White demonstrating for the jury how he stabbed the victim would have actually worked in his favor. So while Mr. White points to this as a failure of counsel to do this, I think he still has to establish prejudice there, and he hasn't done that. So because there is the failure to establish ineffective assistance of trial counsel, there is the failure to establish effective assistance of post-conviction counsel, I think that the procedural bar holds in this case, and so the state would request that this court affirm the district court's decision on that basis, on the procedural bar basis. So if there are no further questions. Thank you. Thank you very much. Mr. Pillay, you exhausted your time, but I'll give you one minute for rebuttal. Your Honor, I greatly appreciate that because I thought the warning light was baked. On the first point, Your Honor, the record is absolutely clear that the stun belt was visible. Mr. White's trial lawyer jumped up to prevent him from doing this demonstration the second the prosecution called on it, and he told the judge that he had been standing in front of the jury to block the jury's view. Also, Your Honor, that would obviously not have been necessary if the stun belt was not visible. Mr. White has also pleaded in his 974.06 petition, which the state has never rebutted or questioned that the stun belt was visible. So I do think for these proceedings, the stun belt was clearly visible, both as a matter of pleading and on the record. To counsel's point regarding the relative strength of those claims, I think Judge Brennan summed it up well. One of them went to the heart of the issue here and what happened. It could have overturned the jury's verdict on second-degree intentional homicide. The appellate counsel did not make... Thank you, counsel. Thank you, Your Honor. The case is taken under advisement.